ADAM K. YOWELL
Nevada Bar No. 11748
Adam.yowell@fisherbroyles.com
FISHERBROYLES, LLP
59 Damonte Ranch Pkwy
Ste B # 508
Reno, NV 89521
Telephone: (775) 230-7364
*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NEXRF Corp., a Nevada Corporation<br><br>Plaintiff,<br>v.<br><br>Playtika Ltd., an Israel Corporation, Playtika Holding Corp., a Delaware Corporation, and Caesars Interactive Entertainment LLC, a Delaware LLC,<br><br>Defendants. | Case No.:  3:20-cv-603<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

<div style="text-align:left; writing-mode: vertical; font-weight:bold">FISHERBROYLES, LLP<br>530 Lytton Avenue, Second Floor<br>Palo Alto, CA 94301<br>Telephone: (775) 230-7364</div>

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff NEXRF Corp. ("NEXRF"), a Nevada Limited Liability Company ("Plaintiff") files this Complaint for damages, injunctive relief and demand for a jury trial against Playtika Ltd., Playtika Holding Corp. (collectively "Playtika"), and Caesars Interactive Entertainment, LLC ("CIE"), (collectively "Defendants"), and alleges as follows:

## NATURE OF THE CASE

1.    NEXRF brings this action against Defendants for infringement of U.S. Patent Nos. 8,747,229 (the '229 patent), 8,506,406 (the '406 patent), 9,646,454 (the '454 patent), 8,506,407 (the '407 patent), and 9,373,116 (the '116 patent)  (collectively, the "patents in suit").

## BACKGROUND

2.    The casino gaming industry has sought to create and encourage new ways for patrons to gamble on casino games.  While many patrons enjoyed the experience of playing a real slot machine in front of them, many potential gaming patrons were underserved.

3.      One area of interest to the casino industry was remote gaming, where a patron could play a casino game while not physically sitting in front of and interacting with a typical casino gaming device.  Examples of prior art devices included systems where a patron would use a handheld device to "play" a casino game by causing a remotely located but otherwise typical slot machine to spin, and the information about the game outcome and the winnings would be communicated to the player through the handheld device.  These devices were flawed.  For example, they did not have a strict correlation between the actual game outcome and what the player was shown, and additionally required the operation of a physical slot machine as an input.

4.      The patents in suit disclose various systems and methods for embodiments of a fully remote, multiplayer capable, secure, and engaging casino-style gaming system.  This novel design departed from prior art systems in that it, among other advancements, provided for streamlined media delivery for increased engagement with less resources, increased security to reduce unauthorized use, multiplayer extensibility with improved scaling and reliability, and a flexible infrastructure that could accommodate gambling or social gaming and different types of games.

5.      The inventive concepts of the patents in suit were unconventional.  At the time of the patents in suit, it was not well-understood, conventional, or routine to have, among other distinctions: 1) a central gaming server that determined game outcome, associated that game outcome with an image ID, and transmitted that image/video and game outcome to a remote device; 2) a verification server coupled with a central gaming server to control access to gaming activities; and, 3) an image and/or video delivery component that included relatively fast memory to store and communicate media associated with recently generated game outcomes.  These unconventional centralized server-based elements allowed for a stable, secure, flexible, engaging multiplayer-compatible online gaming experience for the user while minimizing the hardware, storage, and network burdens and requirements on the user's device.  This combination of desirable qualities was absent in prior art gaming systems, and providing popular features such as progressive jackpots was made simpler and more flexible by the system of the patents in suit.

6.      The '229 patent contains the additional unconventional element of a paytable module associated with the centralized gaming server, which allowed further advantages such as

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

the ability to change game outcome distributions and rewards for all connected devices with any software updates on the device.

7.  The '407 patent contains the additional unconventional element of a transactional system that credited funds from winning game outcomes to a user's financial account, which increases security of the system and reduced the amount of processing and network activity required of the user's device and its associated software.

8.  The '116 patent contains the additional unconventional elements of location tracking of the user and providing rewards to the user for their historical play, which increase the security of play and engagement of the user with the game.

9.  These are just exemplary reasons why the claimed inventions of the patents in suit were not well-understood, routine, or conventional.

10.  The value and unconventional nature of the claimed inventions of the patents in suit are further demonstrated by the fact that, despite being described nearly twenty years ago, it is only in the last few years that online mobile gambling and social casino gaming have become wide-spread.  In those short recent years, however, both mobile casino gambling and social casino gaming have become massive, multi-billion dollar industries.

## PARTIES

11.  NEXRF Corp. is a Nevada corporation with a principal place of business at 9190 Double Diamond Pkwy, Reno, NV 89521.

12.  Defendant Playtika Ltd. is a limited company incorporated and existing under the laws of Israel, with its principal place of business at 8 HaChoshlim Street, Herzliya 4672408, Israel. Playtika Ltd. conducts business throughout Nevada and the United States.

13.  Defendant Playtika Holding Corp. is a corporation incorporated and existing under the laws of Delaware, with its principal place of business at 2225 Village Walk Drive #240, Henderson, Nevada 89052. Playtika Holding Corp. conducts business throughout Nevada and the United States.

14.  Defendant Caesars Interactive Entertainment, LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at One

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

COMPLAINT
4818-9333-3966, v. 3

3

Caesars Palace Drive, Las Vegas, Nevada 89109. Caesars Interactive conducts business throughout Nevada and the United States.

## JURISDICTION AND VENUE

15.     This is a civil action seeking damages and injunctive relief for patent infringement under the patent laws of the United States, Title 35 of the United States Code.  This Court has exclusive subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a).

16.     This Court has personal jurisdiction over Playtika Ltd.  Playtika Ltd. directly and through its agents regularly does, solicits, and transacts business in the State of Nevada, including making available the Accused Games (defined below) and related conduct and transactions with co-defendants Playtika Holding Corp. and CIE.  Those acts have caused and continue to cause injury to NEXRF.

17.     This Court has personal jurisdiction over defendants Playtika Holding Corp. and CIE.  Each of these entities has its principal place of business in Nevada, and directly and through its agents regularly does, solicits, and transacts business in the State of Nevada.  Those acts have caused injury to NEXRF.

18.     Venue is proper in this District under 28 U.S.C. Sections 1391 and 1400(b). Playtika Ltd. is a foreign corporation, and both Playtika Holding Corp and CIE have regular and established places of business in this District.  Playtika Holding Corp. has its principal place of business at 2225 Village Walk Drive #240, Henderson, Nevada 89052.  CIE has its principal place of business at One Caesars Palace Drive, Las Vegas, Nevada 89109.  Defendants have also committed acts of infringement in this district by selling, using, and/or offering for sale the Accused Games in this District.

## JOINDER

19.     In 2011, CIE purchased Playtika Ltd.,[1] and owned and operated Playtika Ltd. for several years until it sold Playtika Ltd. to a Chinese entity, Giant Interactive Group.[2]  The 2016

---

[1] *Caesars Acquires Israel's Playtika*, Global Gaming Business, https://ggbmagazine.com/article/caesars-acquires-israels-playtika/ (last visited 10/20/2020).
[2] *China's Giant leads consortium to buy Playtika for $4.4 billion*, Game Beat,

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

sale of Playtika did not include the World Series of Poker game or the real-money online gaming business.[3]

20.     Playtika has continued to operate CIE-branded games, such as Caesars Casino.[4] The Caesars Rewards program is still associated with other Playtika games, such as Slotomania and Bingo Blitz.[5]

21.     Playtika and CIE's ongoing relationship relating to many of the Accused Games means that the use of those same games amounts to a single transaction or occurrence as between Defendants. Defendants have been and are acting in concert, and are liable jointly, severally, or otherwise for a right to relief related to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling the infringing products in this District.  This action involves questions of law and fact that are common to all Defendants.

22.     Joinder of all Defendants is proper under 35 U.S.C. Section 299(a)(1) & (2).

**DEFENDANTS' INFRINGEMENT OF NEXRF'S INTELLECTUAL PROPERTY**

23.     The recent ubiquity of internet-connected personal devices combined with the unprecedented consequences of the current global pandemic have created a perfect storm for online real-money gambling and social free-to-play gaming.

24.     Online real-money gaming was recently legalized in a few states, and allows users to wager real money in an online environment similar to a real casino.  Online real-money games are associated with a real casino and provide the closest virtual alternative to the physical play of a slot machine in a casino.  In the second quarter of 2020 alone, the online casino gambling games market in the US generated over $400 million in revenue.[6]

25.     Despite the name, "free-to-play" social casino games are enormously lucrative.

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

---

https://venturebeat.com/2016/07/30/chinas-giant-leads-consortium-to-buy-playtika-for-4-4-billion/ (last visited 10/20/2020).
[3] *Id.*
[4] *Google Play Store page for Caesars Casino: Free Slots Games*,
https://play.google.com/store/apps/details?id=com.playtika.caesarscasino&hl=en_US (last visited 10/20/2020).
[5] *Caesars Play Online*, https://www.caesars.com/play (last visited 10/20/2020).
[6] *Online poker and casino games have tripled their revenue from last year as real-world casinos shut their doors*, Business Insider, https://www.businessinsider.com/online-poker-casino-games-business-triple-as-casinos-close-2020-8 (last visited 10/20/2020).

COMPLAINT
4818-9333-3966, v. 3

5

While the download of the game is free, thousands of "in-app" items range in price from a few cents to hundreds of dollars.  These in-app purchases are often subject to heavy discounts in flash sales and are constantly presented to the player.  Defendant Playtika alone generated $425 million in revenue in the first quarter of 2020.[7]  Total revenue for the social casino market are projected to be approximately $6 billion in 2020.  *Id.*

26.     Defendants provided games in both the real-money and social categories.  In the real money category, Defendants have at least the Caesars Casino and Sports App.  The Caesars Casino and Sports App is made available to the public at least through the iOS App Store[8] and the Caesars Casino website.[9]  The Caesars Casino website includes instructions for the download, installation, and account creation steps for the user.[10]

27.     The use, operation, and distribution of the Caesars Casino and Sports App is representative of Defendants' real money online slot games, which are collectively referred to as the "Accused Gambling Games."  "Accused Gambling Games" includes the game application and the infrastructure necessary to operate the game, such as game servers.

28.     In the social casino games category, Defendants are some of the leading game publishers.  Playtika claims over 280,000,000 installations of its Social Casino Games.[11]  CIE also claims to be a "leading provider of social slots games for players on iOS and Android devices."[12]  Exemplary social casino games from Defendants include Slotomania, Caesars Casino: Free Slots Games, and Vegas Downtown Slots – Slot Machines & Word Games. The use, operation, and distribution of these exemplar apps is representative of Defendants' social casino slot games, which are collectively referred to as the "Accused Social Games." "Accused Social Games" includes the game application and the infrastructure necessary to operate the game, such as game servers.  The Accused Gambling Games and the Accused Social Games are, collectively, the

---

[7] *No slots, no problem:  Social gaming steps in to fill the empty space*, CDC Gaming Reports, https://www.cdcgamingreports.com/commentaries/no-slots-no-problem-social-gaming-steps-in-to-fill-the-empty-space/ (last visited 10/20/2020).
[8] https://apps.apple.com/us/app/caesars-casino-sportsbook-nj/id876336616 (last visited 10/20/2020).
[9] https://www.caesarscasino.com/ (last visited 10/20/2020).
[10] https://www.caesarscasino.com/p/mobile-casino/ (last visited 10/20/2020).
[11] https://play.google.com/store/apps/dev?id=8370476508159322879&hl=en&gl=US (last visited 10/20/2020).
[12] https://www.caesarsgames.com/2018/08/30/can-you-win-real-money-on-slot-apps/ (last visited 10/20/2020).

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

"Accused Games."

<div align="center"><b><u>COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,747,229</u></b></div>

<div align="center"><b>(Against all Defendants)</b></div>

29.     Paragraphs 1 through 28 are incorporated herein by reference.

30.     U.S. Patent No. 8,747,229, titled "Gaming System Network and Method for Delivering Gaming Media," was duly and lawfully issued by the United States Patent and Trademark Office on June 10, 2014. A true and correct copy of the '229 patent is attached as Exhibit 1.

31.     NEXRF is the owner by assignment of all rights, title, and interest in the '229 patent, including the right to bring this suit for past and future damages and/or injunctive relief.

32.     The '229 patent is valid and enforceable.

33.     Defendants infringe one or more claims of the '229 patent, including but not limited to claim 1, directly and/or indirectly via induced infringement and/or contributory infringement. Defendants infringe the asserted claims of the '229 patent by making, using, importing, selling for importation, and/or selling after importation into the United States at least the Accused Games in violation of 35 U.S.C. Section 271(a)-(b).  The Accused Games satisfy all limitations of the asserted claims of the '229 patent at least when the respective game is made available for download and play by a user, or after being installed by a user, or after being installed and played by a user.

34.     Defendants had actual knowledge of the '229 patent or were willfully blind to its existence and their infringement no later than the filing of this action.  Defendants' ongoing infringement is willful and deliberate, entitling NEXRF to enhanced damages.

35.     Defendants directly infringe the asserted claims of the '229 patent by making, using, offering to sell, or selling the Accused Games in the United States in violation of 35 U.S.C. Section 271(a).  Claim 1 of the '229 patent is exemplary and recites:

> 1. A gaming server system configured to communicate with at least one network access device communicatively coupled to a network, the gaming server system comprising:
>     a verification system configured to access a registration database having a plurality of registration data associated with each registered user;
>     a memory module configured to store a plurality of images corresponding to at least one game outcome that are communicated to the at least one network access device;

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

COMPLAINT
4818-9333-3966, v. 3

a centralized gaming server communicatively coupled to each of the at least one network access device, the centralized gaming server configured to generate at least one random game outcome by random generation at the centralized gaming server;

a paytable module associated with the centralized gaming server, the paytable module configured to determine one or more prizes associated with a game outcome; and

the centralized gaming server configured to access the memory module and communicate the plurality of images corresponding to the at least one random game outcome to the at least one network access device.

36. Defendants infringe claim 1 for at least the following reasons:

37. To the extent the preamble is limiting, the Accused Games comprise a gaming server system configured to communicate with at least one network access device communicatively coupled to a network.

38. On information and belief, the Accused Games include a verification system configured to access a registration database having a plurality of registration data associated with each registered user. The Accused Games allow and/or require a user to register for a user account, which includes the transmission of registration that may include the player's name, user name, password, Facebook account, and/or other registration data. The Accused Gambling Games also require more substantive registration data to comply with online gambling regulations. The user registration data is stored in a database in a verification system such that the registration data is associated with the registered user.

39. On information and belief, the Accused Games include a memory configured to store a plurality of images corresponding to at least one game outcome that are communicated to the at least one network access device. For example, the Accused Games display celebration graphics and text and/or the display of the slot machine reels when the player achieves certain winning outcomes, such as a winning slot machine spin. At least some of those images are transmitted to the user device over normal internet protocols after the particular game is installed.

40. On information and belief, the Accused Games include a centralized gaming server communicatively coupled to each of the at least one network access device, the centralized gaming server configured to generate at least one random game outcome by random generation at the centralized gaming server. For example, the Accused Games include one or more servers that players connect to in order to play the games, and which generate at least some game outcomes

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

for players playing the game. These game outcomes are generated using a random number generator ("RNG"). For the Accused Gambling Games, the RNG game outcome determination is required by regulations to be conducted at a centralized server.

41. On information and belief, the Accused Games include a paytable module associated with the centralized gaming server, the paytable module configured to determine one or more prizes associated with a game outcome. For example, each slot skin playable on an Accused Game has a paytable, and those paytables can often be displayed to the user if the user performs certain commands. These paytables comprise a matrix of game outcomes, such as slot reel positions, and the resulting prize, such as a multiple of a bet, a jackpot, free spins, a bonus game, or nothing.

42. On information and belief, the centralized gaming server(s) of the Accused Games are configured to access the memory module and communicate the plurality of images corresponding to the at least one random game outcome to the at least one network access device. For example, the mobile application for the particular Accused Game is first downloaded from the appropriate mobile application store, such as the Apple App Store or Google Play. However, after the mobile app is downloaded and installed, additional graphical assets are downloaded for display to the player, including some that are downloaded contemporaneously with play. At least some of these post-install graphical assets are communicated to the user device from the centralized gaming server(s).NEXRF has and continues to be damaged by the Defendants' infringement of the '229 patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,506,406

### (Against all Defendants)

43. Paragraphs 1 through 42 are incorporated herein by reference.

44. U.S. Patent No. 8,506,406, titled "Network Access Device and Method to Run a Game Application," was duly and lawfully issued by the United States Patent and Trademark Office on August 13, 2013. A true and correct copy of the '406 patent is attached as Exhibit 2.

45. NEXRF is the owner by assignment of all rights, title, and interest in the '406 patent, including the right to bring this suit for past and future damages and/or injunctive relief.

COMPLAINT
4818-9333-3966, v. 3

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

46.     The '406 patent is valid and enforceable.

47.     Defendants infringe one or more claims of the '406 patent, including but not limited to claim 1, directly and/or indirectly via induced infringement and/or contributory infringement. Defendants infringe the asserted claims of the '406 patent by making, using, importing, selling for importation, and/or selling after importation into the United States at least the Accused Games in violation of 35 U.S.C. Section 271(a)-(b).  The Accused Games satisfy all limitations of the asserted claims of the '406 patent at least when the respective game is made available for download and play by a user, or after being installed by a user, or after being installed and played by a user.

48.     Defendants had actual knowledge of the '406 patent or were willfully blind to its existence and their infringement no later than the filing of this action.  Defendants' ongoing infringement is willful and deliberate, entitling NEXRF to enhanced damages.

49.     Defendants directly infringe the asserted claims of the '406 patent by making, using, offering to sell, or selling the Accused Games in the United States in violation of 35 U.S.C. Section 271(a).  Defendants directly infringe the asserted claims of the '406 patent, at minimum, through use of the system for testing.  Claim 1 of the '406 patent is exemplary and recites:

> 1. A system to run a gaming application on a network access device, comprising:
>      the network access device; and
>      a remote gaming system including a verification system;
>      the network access device configured to transmit user identification information and security information to the verification system;
>      the network access device configured to receive an acknowledgement from the verification system indicating that the user identification information and security information are valid;
>      the network access device configured to receive a game input from a user of the network access device and transmit the game input to the remote gaming system;
>      the remote gaming system configured to receive the game input and generate a random game output, the remote gaming system further configured to associate an image ID with the random game output and select one or more images associated with the image ID for encoding and broadcasting to the network access device;
>      the network access device configured to receive a plurality of broadcast images generated by the remote gaming system.

50.     Defendants infringe claim 1 for at least the following reasons:

51.     To the extent the preamble is limiting, the Accused Games as operated include a system to run a gaming application on a network access device.

52.     On information and belief, the Accused Games, in operation, include a network access device such as a phone or laptop.

COMPLAINT
4818-9333-3966, v. 3

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

53.     On information and belief, the Accused Games include a remote gaming system including a verification system.  For example, the Accused Games allow and/or require a user to register for a user account and log into a central gaming server system in order to play the games.

54.     On information and belief, the Accused Games include that the network access device is configured to transmit user identification information and security information to the verification system.  For example, the Accused Games when operated on a user device collect and transmit registration data that may include the player's name, user name, password, and other registration data to the verification system.

55.     On information and belief, the Accused Games include that the network access device is configured to receive an acknowledgement from the verification system indicating that the user identification information and security information are valid.  For example, the verification system of the central gaming server system sends a message to the Accused Game application running on a user device that the login information is verified, and the login is allowed to complete and the user to play the game.

56.     On information and belief, the Accused Games include that the network access device is configured to receive a game input from the user and transmit the game input to the remote gaming system.  For example, an Accused Game on a user device will receive an input, such as a touch input, of a user selecting an action, such as touching or clicking the spin button in the game.  This input is then transmitted by the Accused Game application to the remote gaming server system and the inputted command is executed, such as by initiating the play of the game.

57.     On information and belief, the Accused Games include that the remote gaming system is configured to receive the game input and generate a random game output, the remote gaming system further configured to associate an image ID with the random game output and select one or more images associated with the image ID for encoding and broadcasting to the network access device.  For example, the Accused Games include one or more servers that players connect to in order to play the games, and which generate at least some game outcomes for players playing the game.  These game outcomes will be generated after the player initiates play, which is communicated to the gaming server from the Accused Game application running on the user

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

device.  These game outcomes are generated using a RNG.  For the Accused Gambling Games, the RNG game outcome determination is required by regulations to be conducted at a centralized server.  The central gaming server system further associates the generated game outcome with an image ID, such as a celebratory graphic for a winning spin, or the icons on the virtual slot reels.  These images are then encoded and transmitted to the user device over the internet.

58.     On information and belief, the Accused Games include that the network access device is configured to receive a plurality of broadcast images generated by the remote gaming system.  The Accused Game application running on the user device includes instructions sufficient for the user device to be configured to receive the broadcast images from the central gaming server system and display one or more of those images to the user.

59.     Defendants directly infringe the asserted claims of the '406 patent because they use the system as a whole and put it into service.  Defendants or their agents supply every component of the system except the user device, to the extent that is a required element of an asserted claim.  Further, Defendants' applications on a user device control all claimed components, configurations, functions, and processes, which constitutes sufficient control over the user device.

60.     In addition, Defendants are vicariously liable for the actions of its customers because the only action required of a user is to play the Accused Game.  Defendants condition the benefits of playing the game upon the act of the player to actually play the game.  In other words, the player can never win if they do not play.  Further, Defendants exercise the requisite control over the manner and/or timing of the user's actions as it relates to the user's network access device.  Specifically, the player cannot play the game without running Defendants' application, and further restrictions exist such as the requirement of an internet connection to Defendants' servers, logging in to a user account, and other restrictions.  This is particularly apparent for the Accused Gambling Games, as gaming regulations require additional controls such as geofencing.

61.     Additionally or alternatively, Defendants indirectly infringe the asserted claims of the '406 patent through its users' actions.  Defendants contributorily infringe the asserted claims of the '406 patent by making available for use the Accused Games, knowing the same to be especially made or especially adapted for use in infringing the '406 patent, and not a staple article

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

COMPLAINT
4818-9333-3966, v. 3

1    or commodity of commerce suitable for substantial noninfringing use.  The play of the Accused

2    Game is an act of infringement, and so the Accused Games are not staple articles of commerce or

3    otherwise capable of substantial noninfringing use.

4          62.   Additionally or alternatively, Defendants actively, knowingly, and intentionally

5    induce the infringement of the asserted claims of the '406 patent by actively encouraging its users

6    to use the Accused Games by playing them.  Defendants know, at least as of the date of this

7    Complaint, that their actions will induce users of the Accused Games to directly infringe the

8    asserted claims of the '406 patent.  Those users then directly infringe the asserted claims of the

9    '406 patent.  For example, Defendants provide instructions to users on how to access the Accused

10   Games and play the Accused Games and otherwise instructing and encouraging players to play the

11   Accused Games, an act which directly infringes the asserted claims of the '406 patent.[13]

12         63.   NEXRF has and continues to be damaged by the Defendants' infringement of the

13   '406 patent.

14         **COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,646,454**

15                      **(Against all Defendants)**

16         64.   Paragraphs 1 through 63 are incorporated herein by reference.

17         65.   U.S. Patent No. 9,646,454, titled "Networked Gaming System and Method," was

18   duly and lawfully issued by the United States Patent and Trademark Office on May 9, 2017. A

19   true and correct copy of the '454 patent is attached as Exhibit 3.

20         66.   NEXRF is the owner by assignment of all rights, title, and interest in the '454

21   patent, including the right to bring this suit for past and future damages and/or injunctive relief.

22         67.   The '454 patent is valid and enforceable.

23         68.   Defendants infringe one or more claims of the '454 patent, including but not limited

24   to claim 1, directly and/or indirectly via induced infringement and/or contributory infringement.

25   Defendants infringe the asserted claims of the '454 patent by making, using, importing, selling for

26   importation, and/or selling after importation into the United States at least the Accused Games in

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

---

27   [13] *See, e.g., Guide for How to Play Free Slots Online*, https://www.caesarsgames.com/free-slot-games/ (last visited
28   10/20/2020), attached as Exhibit 6; *Slotomania: How to Play Slots* https://www.slotomania.com/how-to-play/ (last
     visited 10/20/2020), attached as Exhibit 7.

violation of 35 U.S.C. Section 271(a)-(b).   The Accused Games satisfy all limitations of the asserted claims of the '454 patent at least when the respective game is made available for download and play by a user, or after being installed by a user, or after being installed and played by a user.

69.   Defendants had actual knowledge of the '454 patent or were willfully blind to its existence and their infringement no later than the filing of this action.   Defendants' ongoing infringement is willful and deliberate, entitling NEXRF to enhanced damages.

70.   Defendants directly infringe the asserted claims of the '454 patent by making, using, offering to sell, or selling the Accused Games in the United States in violation of 35 U.S.C. Section 271(a). Claim 1 of the '454 patent is exemplary and recites:

1. A networked gaming system comprising:
a user identification received by at least one network access device that is compared with registration data in a registration database, wherein a player is provided access to a game when the user identification matches the registered player data;
a transactional component that charges the registered player at least one credit for a game outcome;
a centralized networked gaming module that performs game operations and generates at least one random game output by random generation at the networked gaming module;
the networked gaming module associates the at least one random game output with an image ID; and
the networked gaming module communicates one or more images corresponding to the image ID to the network access device.

71.   Defendants infringe claim 1 for at least the following reasons:

72.   To the extent the preamble is limiting, the Accused Games comprise a networked gaming system.

73.   On information and belief, the Accused Games include a user identification received by at least one network access device that is compared with registration data in a registration database, wherein a player is provided access to a game when the user identification matches the registered player data.  For example, the Accused Games allow or require a user to log onto the game by providing a username and password, a Facebook account, or similar.  This constitutes user identification information that is compared by the game system to the database of registered users, and when an appropriate match is found the player is allowed to log in and access the game.

74.   On information and belief, the Accused Games include a transactional component

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

COMPLAINT
4818-9333-3966, v. 3

that charges the registered player at least one credit for a game outcome.  For example, the Accused Games that include a slot embodiment require a credit wager of some amount, which is often selectable within a range by the player.  These credits may represent actual currency or not, depending on the particular game.  Once the slot machine reel is spun and so the game initiated, the initial wager of credit(s) is deducted from the player's store of credits.

75.     On information and belief, the Accused Games include a centralized networked gaming module that performs game operations and generates at least one random game output by random generation at the networked gaming module.  For example, the Accused Games include one or more servers that players connect to in order to play the games, and which generate at least some game outcomes for players playing the game.  These game outcomes are generated using a RNG.  For the Accused Gambling Games, the RNG game outcome determination is required by regulations to be conducted at a centralized server.

76.     On information and belief, the Accused Games' centralized networked gaming module further associates the at least one random game output with an image ID.  For example, in the Accused Games a winning game outcome will have celebratory graphic media for display to the player.  The appropriate celebratory graphic media is associated to the game outcome by the centralized gaming server of the Accused Games.

77.     On information and belief, the Accused Games' networked gaming module communicates one or more images corresponding to the image ID to the network access device.  For example, the Accused Games transmit the appropriate celebratory graphic media for the particular game outcome to the player's device over normal internet protocols.

78.     Defendants directly infringe the asserted claims of the '454 patent because they use the system as a whole and put it into service.  Defendants or their agents supply every component of the system except the user device, to the extent that is a required element of an asserted claim.  Further, Defendants' applications on a user device control all claimed components, configurations, functions, and processes, which constitutes sufficient control over the user device.

79.     In addition, Defendants are vicariously liable for the actions of its customers because the only action required of a user is to play the Accused Game.  Defendants condition the

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

benefits of playing the game upon the act of the player to actually play the game. In other words, the player can never win if they do not play. Further, Defendants exercise the requisite control over the manner and/or timing of the user's actions as it relates to the user's network access device. Specifically, the player cannot play the game without running Defendants' application, and further restrictions exist such as the requirement of an internet connection to Defendants' servers, logging in to a user account, and other restrictions. This is particularly apparent for the Accused Gambling Games, as gaming regulations require additional controls such as geofencing.

80.     Additionally or alternatively, Defendants indirectly infringe the asserted claims of the '454 patent through its users' actions. Defendants contributorily infringe the asserted claims of the '454 patent by making available for use the Accused Games, knowing the same to be especially made or especially adapted for use in infringing the '454 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. The play of the Accused Game is an act of infringement, and so the Accused Games are not staple articles of commerce or otherwise capable of substantial noninfringing use.

81.     Additionally or alternatively, Defendants actively, knowingly, and intentionally induce the infringement of the asserted claims of the '454 patent by actively encouraging its users to use the Accused Games by playing them. Defendants know, at least as of the date of this Complaint, that their actions will induce users of the Accused Games to directly infringe the asserted claims of the '454 patent. Those users then directly infringe the asserted claims of the '454 patent. For example, Defendants provide instructions to users on how to access the Accused Games and play the Accused Games and otherwise instructing and encouraging players to play the Accused Games, an act which directly infringes the asserted claims of the '454 patent.[14]

82.     NEXRF has and continues to be damaged by the Defendants' infringement of the '454 patent.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 8,506,407

### (Against all Defendants)

83.     Paragraphs 1 through 82 are incorporated herein by reference.

---

[14] Ex. 6; Ex. 7.

COMPLAINT
4818-9333-3966, v. 3

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

84.     U.S. Patent No. 8,506,407, titled "Gaming System Network and Method for Delivering Gaming Media," was duly and lawfully issued by the United States Patent and Trademark Office on August 13, 2013. A true and correct copy of the '407 patent is attached as Exhibit 4.

85.     NEXRF is the owner by assignment of all rights, title, and interest in the '407 patent, including the right to bring this suit for past and future damages and/or injunctive relief.

86.     The '407 patent is valid and enforceable.

87.     Defendants infringe one or more claims of the '407 patent, including but not limited to claim 1, directly and/or indirectly via induced infringement and/or contributory infringement. Defendants infringe the asserted claims of the '407 patent by making, using, importing, selling for importation, and/or selling after importation into the United States at least the Accused Gambling Games in violation of 35 U.S.C. Section 271(a)-(b).  The Accused Gambling Games satisfy all limitations of the asserted claims of the '407 patent at least when the respective game is made available for download and play by a user, or after being installed by a user, or after being installed and played by a user.

88.     Defendants had actual knowledge of the '407 patent or were willfully blind to its existence and their infringement no later than the filing of this action.  Defendants' ongoing infringement is willful and deliberate, entitling NEXRF to enhanced damages.

89.     Defendants directly infringe the asserted claims of the '407 patent by making, using, offering to sell, or selling the Accused Gambling Games in the United States in violation of 35 U.S.C. Section 271(a).  Claim 1 of the '407 patent is exemplary and recites:

1. A gaming system network, comprising:
    a verification system configured to verify that a user attempting to access the gaming system network is a registered player, the user operating a network access device communicating with the gaming system network;
    a gaming system configured to generate at least one random game output, the gaming system configured to associate an image ID with the at least one random game output;
    a video server configured to store a plurality of images corresponding to at least one game, the video server configured to retrieve one or more images associated with the image ID, wherein the one or more images are representative of a game output, the video server configured to communicate the one or more images to the network access device; and
    a transactional system configured to credit monetary funds to a financial account of the user based on the at least one random game output.

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

COMPLAINT
4818-9333-3966, v. 3

90.     Defendants infringe claim 1 for at least the following reasons:

91.     To the extent the preamble is limiting, the Accused Gambling Games comprise a gaming system network.

92.     On information and belief, the Accused Gambling Games include a verification system configured to verify that a user attempting to access the gaming system network is a registered player, the user operating a network access device communicating with the gaming system network.  For example, the Accused Gambling Games require a player to create an account and register with the system.   In order to play the games, the user must enter verification information on their user device, such as a smartphone, which the Accused Gambling Games verify before allowing play.

93.     On information and belief, the Accused Gambling Games include a gaming system configured to generate at least one random game output, the gaming system configured to associate an image ID with the at least one random game output.  For example, the Accused Gambling Games include one or more servers that players connect to in order to play the games.  These game outcomes are generated using a RNG.  The RNG game outcome determination is required by regulations to be conducted at a centralized server for real money gaming applications such as the Accused Gambling Games.  Further  in the Accused Gambling Games a winning game outcome will have celebratory graphic media for display to the player.  The appropriate celebratory graphic media is associated to the game outcome by the centralized gaming server of the Accused Games.

94.     On information and belief, the Accused Gambling Games include a video server configured to store a plurality of images corresponding to at least one game, the video server configured to retrieve one or more images associated with the image ID, wherein the one or more images are representative of a game output, the video server configured to communicate the one or more images to the network access device.  For example, the Accused Gambling Games' server system includes a component that transmits images and/or video to the player device.  These graphics are associated with particular game outcomes, such as a winning spin, a jackpot win, and the like.  The Accused Gambling Games' server system is further configured to determine a graphic that is associated with a particular game outcome, retrieve it, prepare it for transmission to

18

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

the user device, and transmit it to the user device according to normal internet communication protocols.

95.     On information and belief, the Accused Gambling Games further include a transactional system configured to credit monetary funds to a financial account of the user based on the at least one random game output.  For example,  in order to play the games the user first needs a source of funds, which could include linking a credit card or bank account to the user's account.  If, during play, the user wins a game and therefore some amount of credits representing monetary value, those monetary funds are then transferred back to the user's financial account, which could be the user's game account, a bank account, or similar, upon cashing out.

96.     NEXRF has and continues to be damaged by the Defendants' infringement of the '407 patent.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 9,373,116

### (Against all Defendants)

97.     Paragraphs 1 through 96 are incorporated herein by reference.

98.      U.S. Patent No. 9,373,116, titled "Player Tracking Using a Wireless Device for a Casino Property," was duly and lawfully issued by the United States Patent and Trademark Office on January 1, 2016. A true and correct copy of the '116 patent is attached as Exhibit 5.

99.     NEXRF is the owner by assignment of all rights, title, and interest in the '116 patent, including the right to bring this suit for past and future damages and/or injunctive relief.

100.     The '116 patent is valid and enforceable.

101.     Defendants infringe one or more claims of the '116 patent, including but not limited to claim 1, directly and/or indirectly via induced infringement and/or contributory infringement. Defendants infringe the asserted claims of the '116 patent by making, using, importing, selling for importation, and/or selling after importation into the United States at least the Accused Gambling Games in violation of 35 U.S.C. Section 271(a)-(b).  The Accused Gambling Games satisfy all limitations of the asserted claims of the '116 patent at least when the respective game is made available for download and play by a user, or after being installed by a user, or after being installed and played by a user.

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

COMPLAINT
4818-9333-3966, v. 3

102.     Defendants had actual knowledge of the '116 patent or were willfully blind to its existence and their infringement no later than the filing of this action.  Defendants' ongoing infringement is willful and deliberate, entitling NEXRF to enhanced damages.

103.     Defendants directly infringe the asserted claims of the '116 patent by making, using, offering to sell, or selling the Accused Gambling Games in the United States in violation of 35 U.S.C. Section 271(a).  Claim 1 of the '116 patent is exemplary and recites:

1. An interactive gaming system for a casino property, the interactive gaming system comprising:

a wireless device associated with a registered user, wherein the wireless device is used to determine a location of the registered user and the wireless device communicates with a network using at least one wireless networking protocol;

a verification system that accesses a registration database having registration data associated with each registered user;

a centralized gaming server communicatively coupled to the wireless device, the centralized gaming server generates at least one random game outcome;

a memory module that stores a plurality of images corresponding to the at least one game outcome that are communicated to the wireless device;

the centralized gaming server accesses the memory module and communicates the plurality of images corresponding to the random game outcome to the wireless device; and

a casino player tracking system that includes,

a registered user profile that further includes a plurality of user preferences,

a record of a plurality of accumulated points associated with a betting activity of the registered user, wherein the betting activity is associated with the random outcomes generated by the centralized gaming server,

at least one complimentary good or service corresponding to the accumulated points associated with the registered user; and

a plurality of messages generated by the casino player tracking system for the wireless device regarding the complementary goods or services.

104.     Defendants infringe claim 1 for at least the following reasons:

105.     To the extent the preamble is limiting, the Accused Gambling Games comprise an interactive gaming system for a casino property.

106.     On information and belief, the Accused Gambling Games in operation include a wireless device associated with a registered user, wherein the wireless device is used to determine a location of the registered user and the wireless device communicates with a network using at least one wireless networking protocol.  For example, the Accused Gambling Games can be played by a user on their smartphone.  Pursuant to regulation, the user device must be able to have its location determined to be within a gaming jurisdiction via geofencing.  The user's wireless device communicates with the Accused Gambling Games' server wirelessly, using a standard wireless networking protocol, such as Wi-Fi.

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

20

107.   On information and belief, the Accused Gambling Games include a verification system that accesses a registration database having registration data associated with each registered user.  For example, the Accused Gambling Games require a player to create an account and register with the system.  In order to play the games, the user must enter verification information on their user device, such as a smartphone, which the Accused Gambling Games verify before allowing play.

108.   On information and belief, the Accused Gambling Games include a centralized gaming server communicatively coupled to the wireless device, the centralized gaming server generates at least one random game outcome.  For example, the Accused Gambling Games include one or more servers that players connect to via the internet in order to play the games.  These game outcomes are generated using a RNG.  The RNG game outcome determination is required by regulations to be conducted at a centralized server for real money gaming applications such as the Accused Gambling Games.

109.   On information and belief, the Accused Gambling Games' server system includes a memory module that stores a plurality of images corresponding to the at least one game outcome that are communicated to the wireless device. For example, the Accused Gambling Games' server system includes a component that transmits images and/or video to the player device over normal internet protocols.  These graphics are stored in the server system's memory module and associated with particular game outcomes, such as a winning spin, a jackpot win, and the like.  The Accused Gambling Games' server system is further configured to determine a graphic that is associated with a particular game outcome, retrieve it, prepare it for transmission to the user device, and transmit it to the user device according to normal internet protocols.

110.   On information and belief, the Accused Gambling Games' centralized server system accesses the memory module and communicates the plurality of images corresponding to the random game outcomes to the wireless devices.  For example, the Accused Gambling Games' server system is configured to determine a graphic that is associated with a particular game outcome, access it at the memory module, prepare it for transmission to the user device, and transmit it to the wireless user device according to normal internet protocols.

COMPLAINT
4818-9333-3966, v. 3

111.    On information and belief, the Accused Gambling Games include a player tracking system.  For example, the Caesars Rewards component of the Accused Gambling Games track player activities.

112.    On information and belief, the Accused Gambling Games' player tracking system includes a registered user profile that includes a plurality of user preferences.  For example, in the Caesars Rewards program user preferences could include payment options, credit lines, links to local casino accounts, reward point swaps, price alerts, and similar.

113.    On information and belief, the Accused Gambling Games' player tracking system includes a record of a plurality of accumulated points associated with a betting activity of the registered user, where the betting activity is associated with the random outcomes generated by the centralized gaming server.  For example, the Caesars Rewards program tracks player play that includes betting activity in the Accused Gambling Games and assigns reward points based upon that play.

114.    On information and belief, the Accused Gambling Games' player tracking system includes providing at least one complimentary good or service corresponding to the accumulated points associated with the registered user.  For example, some Caesars Rewards benefits include free hotel stays, a free night in Las Vegas or Atlantic City, a free dinner, free valet parking, and free casino game play.  These rewards are associated with various levels of player reward points that the player has accumulated.

115.    On information and belief, the Accused Gambling Games' player tracking system includes a plurality of messages generated by the casino player tracking system for the wireless device regarding the complementary goods or services.  For example, these messages may include emails, texts, phone notifications, browser notifications, and in-app notifications to the user when a reward is available or redeemed.

116.    Defendants directly infringe the asserted claims of the '116 patent because they use the system as a whole and put it into service.  Defendants or their agents supply every component of the system except the user device, to the extent that is a required element of an asserted claim.  Further, Defendants' applications on a user device control all claimed components, configurations,

FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

22

functions, and processes, which constitutes sufficient control over the user device.

117.     In addition, Defendants are vicariously liable for the actions of its customers because the only action required of a user is to play the Accused Gambling Game.  Defendants condition the benefits of playing the game upon the act of the player to actually play the game.  In other words, the player can never win if they do not play.  Further, Defendants exercise the requisite control over the manner and/or timing of the user's actions as it relates to the user's network access device.  Specifically, the player cannot play the game without running Defendants' application, and further restrictions exist such as the requirement of an internet connection to Defendants' servers, logging in to a user account, and other restrictions such as geofencing.

118.     Additionally or alternatively, Defendants indirectly infringe the asserted claims of the '116 patent through its users' actions.  Defendants contributorily infringe the asserted claims of the '116 patent by making available for use the Accused Gambling Games, knowing the same to be especially made or especially adapted for use in infringing the '116 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.  The play of the Accused Gambling Game is an act of infringement, and so the Accused Gambling Games are not staple articles of commerce or otherwise capable of substantial noninfringing use.

119.     Additionally or alternatively, Defendants actively, knowingly, and intentionally induce the infringement of the asserted claims of the '116 patent by actively encouraging its users to use the Accused Games by playing them.  Defendants know, at least as of the date of this Complaint, that their actions will induce users of the Accused Gambling Games to directly infringe the asserted claims of the '116 patent.  Those users then directly infringe the asserted claims of the '116 patent.  For example, Defendants provide instructions to users on how to access the Accused Games and play the Accused Gambling Games and otherwise instructing and encouraging players to play the Accused Gambling Games, an act which directly infringes the asserted claims of the '116 patent.[15]

120.     NEXRF has and continues to be damaged by the Defendants' infringement of the '116 patent.

---

[15] Ex. 6; Ex. 7.

COMPLAINT
4818-9333-3966, v. 3

FisherBroyles, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

A.      Judgment in NEXRF's favor and against Defendants on all causes of action alleged herein;

B.       Damages in an amount to be determined at trial, including trebling of all post-filing damages awarded with respect to infringement of the patents in suit;

C.      Judgment that this is an exceptional case;

D.      Costs of suit incurred herein;

E.      Prejudgment interest;

F.      Attorneys' fees and costs; and

G.      Such other and further relief as the Court may deem to be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, NEXRF respectfully demands a trial by jury on all issues triable by Jury.

DATED this 26th day of October 2020.

Respectfully submitted,

**FISHERBROYLES, LLP**


 /s/ Adam Yowell

ADAM YOWELL
Nevada Bar No. 11748
59 Damonte Ranch Pkwy
Ste B # 508
Reno, NV 89521
Telephone: (775) 230-7364
*Counsel for Plaintiff*

**FISHERBROYLES, LLP**
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
Telephone: (775) 230-7364