UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NEXRF CORP., | Case No. 3:20-cv-00603-MMD-CLB |
| Plaintiff, | ORDER |
| v. | |
| PLAYTIKA LTD., *et al.*, | |
| Defendants. | |

## I.    SUMMARY

Plaintiff NEXREF Corp. sued Defendants Playtika Ltd., Playtika Holding Corp. (collectively, "Playtika") and Caesars Interactive Entertainment ("Caesars") for allegedly infringing five patents[1] by offering online slot machine games. (ECF No. 1.) Before the Court are Caesars and Playtika's motions to dismiss (ECF Nos. 26, 28),[2] and Playtika's motion for sanctions under Federal Rule of Civil Procedure 11 (ECF No. 53).[3,4] As further explained below, because the Court agrees with Defendants in pertinent part that all five of Plaintiff's asserted patents are invalid under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), and its progeny, the Court will grant both motions to dismiss. The Court will also deny Playtika's motion for sanctions primarily because it is based on arguments that the Court does not rule on in this order.

///

---

[1]The five patents are U.S. Patent Nos. 8,747,229 (the '229 patent), 8,506,406 (the '406 patent), 9,646,454 (the '454 patent), 8,506,407 (the '407 patent), and 9,373,116 (the '116 patent) (collectively, the "asserted patents"). (ECF No. 1 at 1.)

[2]Plaintiff filed a combined response (ECF No. 47), and Defendants filed replies (ECF Nos. 51, 52).

[3]Plaintiff filed a response (ECF No. 56), and Playtika filed a reply (ECF No. 57).

[4]The Court denies the parties' requests for oral argument. *See* LR 78-1.

## II.     BACKGROUND

The following allegations are adapted from the Complaint. (ECF No. 1.) Plaintiff alleges that the asserted patents "disclose various systems and methods for embodiments of a fully remote, multiplayer capable, secure, and engaging casino-style gaming system." (*Id.* at 2.) Said otherwise, the asserted patents generally claim slot machine games playable on a computer or handheld device run on a remote server. Plaintiff more specifically alleges that all asserted patents cover certain unconventional elements:

1. A centralized game server that sends game outcomes and corresponding images to a remote device;

2. A verification server coupled to the centralized game server that controls access to gaming activities;

3. A relatively fast image and/or video delivery component.

(*Id.* at 2.)

Plaintiff further alleges that particular asserted patents contain additional unconventional elements. (*Id.* at 2-3.) The '229 patent covers a paytable module associated with the centralized game server. (*Id.*) The '407 patent covers a transactional system that credits funds from winning game outcomes to a user's financial account. (*Id.* at 3.) And the '116 patent covers location tracking of a user, along with providing that user with rewards. (*Id.*)

Caesars owned Playtika for some time but does not anymore. (*Id.* at 4-5.) Both Defendants offer various mobile slot machine games, some that allow users to wager real money, and some that do not. (*Id.* at 5-7.) Plaintiff accuses these games of infringement.[5] (*Id.* at 5-23.)

///

---

[5]Plaintiff's Complaint is unclear as to who makes what game, and precisely which games Plaintiff is accusing of infringing which patents. Indeed, Defendants argue Plaintiff's Complaint is fatally unclear. (ECF Nos. 26 at 24-25, 28 at 10-16.) However, the Court does not wade into these issues because it finds the asserted patents invalid under *Alice* and its progeny.

Plaintiff's Complaint includes five counts, one for each of the asserted patents. (*Id.*) In each count, Plaintiff alleges that Defendants infringe "the asserted claims of" each of the asserted patents, and otherwise states that Defendants infringe "one or more claims of" each patent, "including but not limited to claim 1[.]" (*See, e.g.*, *id.* at 7.) But Plaintiff characterizes claim 1 of each asserted patent as exemplary, and only ever specifically includes the limitations of claim 1 of each asserted patent in its Complaint. (*Id.* at 7-8, 10, 14, 17, 20.)

Following the order that Plaintiff uses in the Complaint, and to provide necessary context for the Court's discussion *infra*, claim 1 of each of the asserted patents follows below.

### A. The '229 patent

A gaming server system configured to communicate with at least one network access device communicatively coupled to a network, the gaming server system comprising:

    a verification system configured to access a registration database having a plurality of registration data associated with each registered user;

    a memory module configured to store a plurality of images corresponding to at least one game outcome that are communicated to the at least one network access device;

    a centralized gaming server communicatively coupled to each of the at least one network access device, the centralized gaming server configured to generate at least one random game outcome by random generation at the centralized gaming server;

    a paytable module associated with the centralized gaming server, the paytable module configured to determine one or more prizes associated with a game outcome; and

    the centralized gaming server configured to access the memory module and communicate the plurality of images corresponding to the at least one random game outcome to the at least one network access device.

(*Id.* at 7-8.)

### B. The '406 Patent

A system to run a gaming application on a network access device, comprising:

    the network access device; and

    a remote gaming system including a verification system;

    the network access device configured to transmit user identification information and security information to the verification system;

    the network access device configured to receive an acknowledgement from the verification system indicating that the user identification information and security information are valid;

3

the network access device configured to receive a game input from a user of the network access device and transmit the game input to the remote gaming system;

the remote gaming system configured to receive the game input and generate a random game output, the remote gaming system further configured to associate an image ID with the random game output and select one or more images associated with the image ID for encoding and broadcasting to the network access device;

the network access device configured to receive a plurality of broadcast images generated by the remote gaming system.

(*Id.* at 10.)

## C.    The '454 Patent

A networked gaming system comprising:

a user identification received by at least one network access device that is compared with registration data in a registration database, wherein a player is provided access to a game when the user identification matches the registered player data;

a transactional component that charges the registered player at least one credit for a game outcome;

a centralized networked gaming module that performs game operations and generates at least one random game output by random generation at the networked gaming module;

the networked gaming module associates the at least one random game output with an image ID; and

the networked gaming module communicates one or more images corresponding to the image ID to the network access device.

(*Id.* at 14.)

## D.    The '407 Patent

A gaming system network, comprising:

a verification system configured to verify that a user attempting to access the gaming system network is a registered player, the user operating a network access device communicating with the gaming system network;

a gaming system configured to generate at least one random game output, the gaming system configured to associate an image ID with the at least one random game output;

a video server configured to store a plurality of images corresponding to at least one game, the video server configured to retrieve one or more images associated with the image ID, wherein the one or more images are representative of a game output, the video server configured to communicate the one or more images to the network access device; and

a transactional system configured to credit monetary funds to a financial account of the user based on the at least one random game output.

(*Id.* at 17.)

## E.    The '116 Patent

An interactive gaming system for a casino property, the interactive gaming system comprising:

4

a wireless device associated with a registered user, wherein the wireless device is used to determine a location of the registered user and the wireless device communicates with a network using at least one wireless networking protocol;

a verification system that accesses a registration database having registration data associated with each registered user;

a centralized gaming server communicatively coupled to the wireless device, the centralized gaming server generates at least one random game outcome;

a memory module that stores a plurality of images corresponding to the at least one game outcome that are communicated to the wireless device;

the centralized gaming server accesses the memory module and communicates the plurality of images corresponding to the random game outcome to the wireless device; and a casino player tracking system that includes,

> a registered user profile that further includes a plurality of user preferences,

> a record of a plurality of accumulated points associated with a betting activity of the registered user, wherein the betting activity is associated with the random outcomes generated by the centralized gaming server,

> at least one complimentary good or service corresponding to the accumulated points associated with the registered user; and

> a plurality of messages generated by the casino player tracking system for the wireless device regarding the complimentary goods or services.

(*Id.* at 20.)

## III.    MOTIONS TO DISMISS

The Court begins by reciting the legal standards governing its review of these motions. It then analyzes Claim 1 of the '229 patent under the *Alice* framework as representative of the asserted claims of the '454 and '406 patents as well.[6] The Court then analyzes Claim 1 of the '407 patent under the *Alice* framework, followed by Claim 1 the '116 patent.[7] Finally, the Court explains that it will not grant Plaintiff leave to amend, as amendment would be futile. Again, and as noted, because the Court finds Defendants'

---

[6]Plaintiff stated that it did "not oppose treating the '229 Patent as representative of the '454 and '406 Patents for the purposes of this § 101 analysis." (ECF No. 47 at 16 n.10.) Plaintiff also identifies claim 1 of the '229 patent as exemplary, so the Court's analysis of claim 1 applies to all other claims of the '229 patent as well. (ECF No. 1 at 7.)

[7]As noted, Plaintiff itself holds these two claims out as exemplary of the asserted claims of these two patents, so the Court's findings as to these two claims apply to both patents more broadly. (ECF No. 1 at 17, 20.)

*Alice* arguments persuasive, it does not address any of the other arguments Defendants raised in their motions to dismiss.

## A. Legal Standards

### 1. Motions to Dismiss

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts must apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the Court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (internal quotation marks and citation omitted). That is insufficient.

When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

### 2. *Alice*

Under Section 101 of the Patent Act, an inventor may obtain a patent on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Courts, however, "have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). The concern behind these excepted categories is "one of pre-emption"—if an inventor could obtain patent protection over these "building blocks of human ingenuity," then the patent scheme would work to undermine, not promote, future innovation. *Id.* But courts are careful to balance concerns over preemption with the fact that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). Thus, where an invention moves beyond an abstract idea by applying it "to a new and useful end," the invention will meet the Section 101 standard. *Alice*, 573 U.S. at 217 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Considering these competing concerns, the Supreme Court has developed a two-part test to assess whether a patent covers an abstract idea. First, courts must determine whether a patent's claims are directed to a "patent-ineligible concept[,]" such as an abstract idea. *Id.* Abstract ideas may be "preexisting, fundamental truth[s]" such as mathematical equations, and also encompass "method[s] of organizing human activity" or "longstanding commercial practice[s]" like intermediated settlement or risk hedging. *Id.* at 220.

Second, if a court "determine[s] that the patent is drawn to an abstract idea or otherwise ineligible subject matter," then that court examines "whether the remaining elements, either in isolation or combination with the non-patent-ineligible elements, are

sufficient to 'transform the nature of the claim into a patent-eligible application.'" *Intellectual Ventures I LLC v. Capital One Bank (USA)* ("*Capital One*"), 792 F.3d 1363, 1366-67 (Fed. Cir. 2015) (quoting *Alice*, 573 U.S. at 223).

Whether a patent is eligible under § 101 is a question of law that may be determined at the dismissal stage. *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013) (reviewing a § 101 determination *de novo* but noting that the legal issue on review "may contain underlying factual issues"); *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348-49 (Fed. Cir. 2015) (affirming a district court's granting of a motion to dismiss on § 101 grounds).

## B.  Discussion

To start, Plaintiff argues that Defendants' motions to dismiss are premature and therefore noncompliant with LPR 1-4(c)[8] because there are threshold factual issues the Court must resolve before determining invalidity and "there will be significant claim construction disputes" in this case. (ECF No. 47 at 15.) However, and as Defendants argue (ECF Nos. 51 at 13-14, 52 at 8), Plaintiff does not specify what those factual issues and claim construction disputes are (*see generally* ECF No. 47). Moreover, having reviewed the asserted patents, the parties' briefing, and the applicable law, the Court cannot say what those factual issues and claim construction disputes—rendering an *Alice* analysis of the asserted patents premature—would be. The Court will address the merits of the parties' *Alice* arguments now. *See Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (concluding that neither conclusory statements nor unexplained, potential claim construction disputes prevent a district court from addressing patent eligibility at the pleadings stage).

///

---

[8]LPR 1-4(c) provides, "A party moving to dismiss one or more claims as patent-ineligible under § 101 must demonstrate in its motion, if appropriate, that there is no factual issue, claim construction or otherwise, that the court need determine before deciding dismissal under 35 U.S.C. § 101. The filing of a § 101 motion before a Claim Construction Order must not delay any date in the Discovery Plan and Scheduling Order, unless otherwise ordered by the court."

## 1. '229 Patent[9]

The Court addresses below both steps of the *Alice* analysis as to Claim 1 of the '229 patent because it is drawn to patent-ineligible subject matter.

### a. *Alice* Step One

Claim 1 of the '229 patent is directed to the abstract idea of remotely playing a slot machine on a server. (ECF No. 1-1 at 19.) As Playtika argues, Claim 1 of the '229 patent is analogous to the claims found abstract in *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007-08 (Fed. Cir. 2014) and *In re Smith*, 815 F.3d 816, 818-19 (Fed. Cir. 2016). (ECF No. 28 at 20.) And Plaintiff's decision not to address *Planet Bingo* in response to Playtika's motion to dismiss indeed suggests that Plaintiff has no convincing response. (ECF No. 47.) In *Planet Bingo*, the Federal Circuit Court of Appeals affirmed the district court's finding that patent claims directed to "managing a bingo game while allowing a player to repeatedly play the same sets of numbers in multiple sessions" were directed to an abstract idea. 576 F. App'x at 1007-08. There, the Federal Circuit described as exemplary a claim that recited "the steps of selecting, storing, and retrieving two sets of numbers, assigning a player identifier and a control number, and then comparing a winning set of bingo numbers with a selected set of bingo numbers." *Id.* But this claim was directed to an abstract idea because "not only can these steps be 'carried out in existing computers long in use,' but they also can be 'done mentally.'" *Id.* at 1008.

The system described in Claim 1 of the '229 patent is similar because it describes a slot machine that runs on a server. (ECF No. 1-1 at 19.) The components of this claim are all processes that could be carried out in existing computers, as evidenced by the fact that the '229 patent's specification does not describe any of the computerized components of the purported invention as novel or representing improvements on the prior art. (*See generally id.*; *see also* ECF No. 47 at 18-19 (effectively conceding that all component parts of the claim were routine).) And like the "rules for conducting a wagering

---

[9]As noted *supra*, the Court's analysis in this section applies with equal force to the '454 and '406 patents.

game" found abstract in *In re Smith*, 815 F.3d at 818, a slot machine described at the high level at which it is described in this claim is a "fundamental economic practice" like those previously found abstract in binding caselaw. *Id.* (citations omitted). And even while the system described in Claim 1 of the '229 patent runs on a server, that does not make it any less abstract. *See Capital One*, 792 F.3d at 1367 ("And while the claims recite budgeting using a 'communication medium' (broadly including the Internet and telephone networks), that limitation does not render the claims any less abstract."). This is contrary to Plaintiff's primary argument where Plaintiff characterizes the centralized game server as one of the key inventive elements of all asserted patents. (ECF No. 47 at 17-19.)

Plaintiff's reliance on *In re Smith* is also misplaced. (ECF No. 47 at 21.) Plaintiff specifically relies on *In re Smith* to argue that not all patents directed to the gaming arts are categorically invalid. (*Id.*) While that is a fair characterization of one of the Federal Circuit's statements in *In re Smith*, it does not render Claim 1 of the '229 patent non-abstract. To the contrary, Claim 1 of the '229 patent has more in common with the patent claims held invalid in *In re Smith* than it does with the hypothetical gaming patent described in *In re Smith* that may be patent eligible. *See* 815 F.3d at 818-19 (affirming the Board's finding that a "wagering game is, effectively, a method of exchanging and resolving financial obligations based on probabilities created during the distribution of the cards."). Like the claims at issue in *In re Smith*, which covered the rules of a card game, Claim 1 of the '229 patent covers a slot machine that can be played remotely. And that slot machine is effectively a method of exchanging and resolving financial obligations based on probabilities created by a generic random number generator. (ECF No. 1-1 at 19.) *See also In re Smith*, 815 F.3d at 818-19.

Further, Plaintiff's argument that "the patents-in-suit are directed to technical improvements in online gaming systems" is unpersuasive because Claim 1 of the '229 patent does not explain how any of the purported technical improvements work.[10] (ECF

---

[10]To the extent that Plaintiff is arguing Claim 1 of the '229 patent is directed to improvements in computer functionality, the Court rejects that argument because nothing

No. 47 at 17.) Claim 1 includes a verification system that has registration data associated with registered users, but how does it make that association? (ECF No. 1-1 at 19.) Claim 1 also includes a centralized gaming server that randomly generates a game outcome, but how does the centralized gaming server do that? (*Id.*) As another example, Claim 1 includes a paytable module that determines the prizes associated with an outcome, but also does not explain how the paytable module does that.[11] (*Id.*) *See, e.g.*, *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1021 (N.D. Cal. 2020) (currently on appeal) ("That's a result, not a means to achieve it. So, up front it's abstract."). In general, Plaintiff's argument that Claim 1 of the '229 patent is directed to technical improvements in online gaming systems would be more persuasive if the claim itself explained how to accomplish any of the purported technical improvements it covers. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions.").

Even more generally, Plaintiff's arguments sound in novelty or nonobviousness instead of effectively countering Playtika's argument that Claim 1 of the '229 patent is directed to an abstract idea. "But, a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (emphasis in original). And Plaintiff's argument that Defendants' noninfringement arguments contradict their arguments that the asserted patents are unpatentably abstract does not follow either. As Defendants reply, there is nothing contradictory about them

---

in the claims or specification of the patent claims or discusses any sort of improvements in the computer components that make up the system. (ECF No. 1-1.) *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Unlike *Enfish*, claim 1 does not claim a software method that improves the functioning of a computer. It claims a 'process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'") (citations omitted).

[11]The specification does provide an illustrative example of the rules governing the paytable's programming, but the paytable as described in Claim 1 of the '229 patent is written more broadly and left undefined because the example rules provided in the specification are merely illustrative. (*Compare* ECF No. 1-1 at 18-19 *with id.* at 19.)

arguing they do not infringe an abstract idea as Plaintiff has characterized it. (ECF Nos. 51 at 11, 52 at 6.)

In sum, Claim 1 of the '229 patent is directed to the abstract idea of remotely playing a slot machine on a server, and none of Plaintiff's arguments to the contrary are persuasive.

### b. *Alice* Step Two

Moreover, Claim 1 of the '229 patent lacks an inventive concept sufficient to transform the abstract idea described therein into a patent-eligible application. The '229 patent instead generally consists of a combination of generic computer elements performing conventional functions. For example, the '229 patent describes networked interactive gaming over the internet as well known in the art, including secure methods for doing so. (ECF No. 1-1 at 12.) The specification also describes random number generators and paytables as known in the art. (*Id.*) The same goes for displays and encryption systems. (*Id.* at 12, 16.) But "[i]nstructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible." *Capital One*, 792 F.3d at 1368; *see also Brit. Telecommunications PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020) (reciting generic computer hardware performing conventional steps does not constitute an inventive concept).

Moreover, the features described in Claim 1 of the '229 patent are described and claimed generically. (ECF No. 1-1 at 19 (describing the verification system, memory module, centralized gaming server, and paytable module based on what they can do instead of how they do it).) Claim 1 of the '229 patent thus lacks an inventive concept sufficient to transform the abstract idea of remotely playing a slot machine on a server into a patent-eligible application. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("The features set forth in the claims are described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent.").

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff first argues that "[w]hat was 'well-understood, routine, and conventional' at the priority date of the patents is a question of fact" not suitable for resolution at this stage of the litigation. (ECF No. 47 at 23.) But that is not the case, where, as here, the specification of the asserted patent describes its own components as conventional. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018) ("In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute.") (citation omitted). Plaintiff next points to certain allegations in its Complaint "regarding the technical improvements claimed by the patents-in-suit[.]" (ECF No. 47 at 23 (citing ECF No. 1 at 2-3).) But the Court instead agrees with Playtika that these alleged advantages "are at most all incidental advantages of using a generic server for its intended purpose and cannot therefore be considered inventive." (ECF No. 51 at 12.) *See also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.").

Plaintiff finally argues that the patents in suit are at least as inventive as those upheld in *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). (ECF No. 47 at 23-24.) In *Bascom*, the Federal Circuit found the claim at issue patent-eligible at *Alice* step two because it claimed and described the inventive concept of "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." 827 F.3d at 1350. But Plaintiff does not persuasively explain how this finding applies to Claim 1 of the '229 patent, merely arguing that "the arrangement of all the components including the centralization of the game outcome and transmission of images related to that game outcome is unconventional." (ECF No. 47 at 24.) And again, the centralization of game outcome and image transmission that Plaintiff describes as the inventive concept of this

1    claim is merely an incidental benefit of the claimed generic server. (ECF No. 51 at 12.)

2    *See also BSG Tech*, 899 F.3d 1281 at 1290-91. The Court accordingly concludes that

3    Claim 1 of the '229 patent lacks an inventive concept that could render it patent-eligible.

4         In sum, based on its analysis of representative Claim 1 of the '229 patent, the Court

5    concludes that the '229, '454, and '406 patents are all invalid under *Alice* and its progeny.

6                        **2.      '407 Patent**

7         The same goes for the '407 patent. Plaintiff argues this patent differs from the '229

8    patent in that it "includes an additional feature in a centralized transaction system that

9    credits funds to a financial account of the user based on the game outcome." (ECF No.

10   47 at 20 (citing ECF No. 1-4 at 19).) Plaintiff further explains that storing a user's financial

11   account information on a centralized server offered improved security over prior art

12   systems that stored account information either on a slot machine or otherwise locally. (*Id.*)

13   Caesars counters that this improvement is merely a benefit of practicing the abstract idea

14   recited in the patent, not a technological improvement to technology—or said otherwise,

15   that nothing in the patent allows a computer to do something it could not do before. (ECF

16   No. 52 at 3-4.) The Court agrees with Caesars.

17                       **a.      *Alice* Step One**

18        To start, the Court incorporates by reference its discussion *supra* regarding the

19   '229 patent because much of it applies to the '407 patent as well. As articulated by

20   Plaintiff, the difference is that the '407 patent includes "a transactional system configured

21   to credit monetary funds to a financial account of the user based on the at least one

22   random game output." (ECF No. 1-4 at 19; *see also* ECF No. 47 at 20.) But the Court

23   agrees with Caesars that this is "merely claiming an abstract idea as a result without

24   claiming a specific mechanism to achieve that result[.]" (ECF No. 52 at 4.) Indeed, even

25   in the specification of the '407 patent, the transactional system is described based on

26   what it can do, and not how it performs any of the functions it purportedly includes. (ECF

27   No. 1-4 at 14 ("Preferably, the transactional system is capable of receiving a plurality of

28   funds from a financial account and converting them to credits that are used in the

broadband gaming system."), 15 ("The transactional system 38 performs a plurality of functions including tracking each transaction performed by both the verification system and the broadband gaming system and conducting electronic fund transfers."), 17 ("The transactional system 38 performs a plurality of functions including tracking each transaction performed by both the verification system and the broadband gaming system.").) This is the sort of result-focused, functional claim language frequently held patent-ineligible under *Alice* and its progeny. *See Elec. Power Grp.*, 830 F.3d at 1356. Indeed, the transactional system described in Claim 1 of the '407 patent is an example of "using generic computer and network technology to carry out economic transactions." *Id.* It is drawn to patent-ineligible concept under *Alice* step one.

### b. *Alice* Step Two

And Claim 1 of the '407 patent lacks an inventive concept that could save the '407 patent at *Alice* step two. Claim 1 of the '407 patent as to the transactional system that Plaintiff points to "merely describe[s] the functions of the abstract idea itself, without particularity. This is simply not enough under step two." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017). (*See also* ECF No. 1-4 at 14, 15, 17, 19 ("a transactional system configured to credit monetary funds to a financial account of the user based on the at least one random game output.").) The transactional system "neither improve[s] the functions of the computer itself, nor provide[s] specific programming, tailored software, or meaningful guidance for implementing the abstract concept." *Intell. Ventures*, 850 F.3d at 1342. The '407 patent is accordingly invalid under *Alice* and its progeny.

### 3. '116 patent

### a. *Alice* Step One

Claim 1 of the '116 patent is likewise directed to an abstract idea: incentivizing gambling tailored to a user's location. Caesars argues that the '116 patent is drawn to the abstract idea of incentivized computer gambling. (ECF No. 26 at 6.) Plaintiff counters that the '116 patent is not directed to an abstract idea because of its "features of tracking the

location and gameplay of the user and offering rewards or gameplay options to the user based upon that tracked information[,]" which are an improvement upon prior art tracking systems. (ECF No. 47 at 20-21.) The Court generally agrees with Caesars, though it finds the '116 patent is drawn to the abstract idea of incentivized gambling tailored to a user's specific location, not merely incentivized gambling.

As discussed as to the '229 patent, the Federal Circuit has previously held that a gambling game managed on a computer was abstract because it "'consists solely of mental steps which can be carried out by a human using pen and paper.'" *Planet Bingo,* 576 Fed. App'x at 1007 (citing *Planet Bingo, LLC v. VKGS LLC*, 961 F. Supp. 2d 840, 851 (W.D. Mich. 2013)). Similarly, here, the '116 patent is directed to a computerized version of a common casino slot machine game like those played in person. But the '116 patent is also drawn to the abstract idea of tailoring information based on location. However, the Federal Circuit has also held that location "targeted marketing is a form of 'tailoring information based on [provided] data,'" and is an abstract idea. *Bridge and Post, Inc. v. Verizon Communications, Inc.*, 778 Fed. App'x 882, 887 (Fed. Cir. 2019) (citing *Capital One*, 792 F.3d at 1369); *see also Brit. Telecommunications PLC*, 813 F. App'x at 587 ("We have previously held that tailoring the provision of information to a user's characteristics, such as location, is an abstract idea.") (citing *Capital One*, 792 F.3d at 1369). Thus, and despite Plaintiff's contentions to the contrary, Claim 1 of the '116 patent is drawn to the abstract idea of incentivizing gambling tailored to a user's location rather than improving the technical functionality of any prior art tracking system. The Court accordingly proceeds to *Alice* step two.

### b. Alice Step Two

But Claim 1 of the '116 patent does not set forth an inventive concept that could render it patent-eligible at *Alice* step two. Plaintiff argues that the asserted patents, including the '116 patent, "are directed to technical improvements in online gaming systems" by "centralizing critical game activities, such as authentication, game outcome generation, and game resolution." (ECF No. 47 at 17-18.) Caesars counters that the '116

patent lacks an inventive concept because Claim 1 of the '116 patent does not "disclose any special way of gaming or incentivizing gaming," nor does it "require any specific, improved hardware or software configuration." (ECF No. 52 at 6.) The Court agrees with Caesars.

Claim 1 of the '116 patent recites only generic computer hardware performing routine functions—a wireless device, a verification system, a centralized gaming server, and a memory module—to allow a user to play an online slot machine game. (ECF No. 1-5 at 10.) And the Federal Circuit has concluded that patent claims that do not "require[] anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information" are unpatentable. *Elec. Power Grp.*, 830 F.3d at 1355. Claim 1 of the '116 patent therefore lacks an inventive step that could render it patent eligible. Moreover, Claim 1 of the '116 patent does not explain how it improves any computer hardware or software. (ECF No. 1-5 at 10.) Further, the claim is written in a style that the Federal Circuit would deem "result-focused" and therefore unlikely to survive *Alice* scrutiny. *Elec. Power Grp.*, 830 F.3d at 1356. The law demands more than Claim 1 of the '116 patent offers: a result-oriented solution that provides "insufficient detail for how a computer accomplishes it." *Capital One*, 850 F.3d at 1342. The '116 patent therefore does not survive scrutiny at *Alice* step two, and its accordingly invalid under *Alice* and its progeny.

## C. Leave to Amend

Plaintiff requests leave to amend if the Court dismisses any of Plaintiff's claims. (ECF No. 47 at 23.)[12] The Court has discretion to grant leave to amend and should freely do so "when justice so requires." Fed. R. Civ. P. 15(a); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nonetheless, the Court may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522,

---

[12]This is the request for amendment specific to the *Alice* arguments.

532 (9th Cir. 2008). Facts raised for the first time in a plaintiff's opposition papers should be considered by the Court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001).

The Court declines to grant Plaintiff leave to amend here because amendment would be futile. *See Simio*, 983 F.3d at 1364 (affirming the district "court's futility-based denial" of leave to amend to the plaintiff). As to the parties' *Alice* arguments, Plaintiff only requests leave to amend to add allegations regarding the inventive steps present in the asserted patents. (ECF No. 47 at 23.) But Plaintiff does not explain what allegations it could add that would be both consistent with those in its Complaint and sufficient to show that the asserted patents contain the inventive steps required to resuscitate the patents at *Alice* step two. (*Id.* at 23-24.) And the Court cannot foresee any allegations Plaintiff could add that would solve one of the key issues with the purportedly inventive steps of the asserted patent claims—that they "merely describe the functions of the abstract idea itself, without particularity." *Intell. Ventures*, 850 F.3d at 1341. The Court will accordingly dismiss Plaintiff's Complaint with prejudice, as amendment would be futile.

## IV. MOTION FOR SANCTIONS

The Court first describes this case's procedural history to this point, then recites the legal standard governing its review of Playtika's motion for sanctions, and then explains its ruling on Playtika's motion.

### A. Procedural History

The procedural history of this case is not extensive. Plaintiff filed its Complaint in October 2020. (ECF No. 1.) Defendants filed their motions to dismiss in February 2021. (ECF Nos. 26, 28.) The parties have not engaged in any discovery, in pertinent part because Magistrate Judge Carla L. Baldwin granted Playtika's motion to stay discovery pending resolution of Defendants' motions to dismiss in April 2021. (ECF No. 50.) Playtika filed its motion for sanctions in May 2021, seeking its fees and costs incurred in defending against this case, arguing that Plaintiff failed to conduct an adequate pre-suit investigation

18

before filing suit against Playtika because Plaintiff could have determined Playtika does not infringe the asserted patents through cursory review of publicly-available materials, and because one of Plaintiff's arguments presented in opposition to Playtika's motion to dismiss is baseless. (ECF No. 53.)

## B.    Legal Standard

"The central purpose of Rule 11 is to deter baseless filings." *Newton v. Thomason*, 22 F.3d 1455, 1463 (9th Cir. 1994) (citation omitted). The rule justifies sanctions "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997) (citation omitted). Rule 11, however, "is not intended to permit sanctions just because the court later decides that the lawyer is wrong." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987) (internal quotation marks and citation omitted). Applying Second Circuit law, the Federal Circuit has suggested that Rule 11 sanctions for filing a baseless complaint are only appropriate when the plaintiff's position on patent eligibility is not even colorable. *See Gust, Inc., v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1328-29 (Fed. Cir. 2018). "In view of the evolving nature of § 101 jurisprudence during [the roughly 2015-2017 time period], it is particularly important to allow attorneys the latitude necessary to challenge and thus solidify the legal rules without the chill of direct economic sanctions." *Id.* at 1329; *see also id.* at 1325-26 (providing timeline of relevant events).

## C.    Discussion

Playtika essentially asks the Court to sanction Plaintiff for filing this case based on the strength of two noninfringement arguments raised by Playtika. (ECF No. 35.)[13] But the Court has not ruled on the merits of Playtika's noninfringement arguments, instead

---

[13]Plaintiff argues the Court should not even address Playtika's motion for sanctions on the merits because it violates the stay that Playtika itself obtained. (ECF No. 56 at 5.) Playtika counters that the Court can—and should—address the motion for sanctions now because the "stay Playtika requested and that was granted in this case is limited to 'discovery' and 'deadlines' imposed by Federal and Local Rules." (ECF No. 53 at 4.) The Court agrees with Playtika. Playtika only sought a stay of "discovery and all deadlines under Fed. R. Civ. P. 26(f), the Local Rules and the Local Patent Rules" (ECF No. 29 at 1), and Judge Baldwin both granted that motion and only referred to pending discovery in her order granting the motion (ECF No. 50 at 2).

1   agreeing with Defendants that this entire case is properly disposed of under *Alice* and its
2   progeny. Playtika's motion does not address its *Alice* arguments at all.

3       That means Playtika's motion is little help in determining whether Plaintiff's position
4   on patent eligibility is not even colorable. *See Gust*, 905 F.3d at 1328-29. And the Court
5   finds it improper to make that determination *sua sponte*. Beyond the fact that Playtika
6   does not address the factors the Court should consider given that the Court only
7   addressed the parties' *Alice* arguments, two principles specifically cause the Court to
8   pause. First, the Ninth Circuit warns that Rule 11 is not intended to permit sanctions just
9   because the Court determined Plaintiff's lawyers were wrong—in this case, that the
10  asserted patents are patent eligible. *See Rachel*, 831 F.2d at 1508. Second, the Court
11  reads *Gust*, 905 F.3d at 1328-29, to contain a note of caution from the Federal Circuit
12  regarding awarding Rule 11 sanctions where, as here, the Court makes an *Alice* ruling
13  early on in a case. The Court will therefore deny Playtika's motion for sanctions.

14  **V.  CONCLUSION**

15      The Court notes that the parties made several arguments and cited to several
16  cases not discussed above. The Court has reviewed these arguments and cases and
17  determines that they do not warrant discussion as they do not affect the outcome of the
18  motions before the Court.

19      It is therefore ordered that Defendant Caesars Interactive Entertainment's motion
20  to dismiss (ECF No. 26) is granted.

21      It is further ordered that Defendants Playtika Holding Corp. and Playtika Ltd.'s
22  motion to dismiss (ECF No. 28) is granted.

23      It is further ordered that Defendants Playtika Holding Corp. and Playtika Ltd.'s
24  motion for Rule 11 sanctions (ECF No. 53) is denied.

25      It is further ordered that Plaintiff's Complaint (ECF No. 1) is dismissed, in its
26  entirety, with prejudice, as amendment would be futile.

27      It is further ordered that U.S. Patent Nos. 8,747,229, 8,506,406, 9,646,454,
28  8,506,407, and 9,373,116 are invalid as further explained herein.

The Clerk of Court is directed to enter judgment accordingly—in Defendants' favor—and close this case.

DATED THIS 7th Day of July 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE